Sanjay Sethi, Esq.
Sethi & Mazaheri, LLC.
344 Grove Street, #111
Jersey City, NJ 07302
Telephone: (646) 405-9846
Fax: (201) 595-0957
Bar #: 1009588

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **FAROOZ AHMAD RATHER,**<br>11 Englewood Avenue, Apt 8<br>Brookline, MA 02445<br><br>Plaintiff,<br><br>**v.**<br><br>**MERRICK GARLAND, in his official capacity as Attorney General of the United States,**<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>**ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security,**<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485<br><br>**UR M. JADDOU, in her official capacity as Director, U.S. Citizenship and Immigration Services,**<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485<br><br>**JOHN ALLEN, in his official capacity as Director, U.S. Citizenship and Immigration Services, Texas Service Center,**<br>2707 Martin Luther King Jr. Ave, SE<br>Washington, DC 20528-0485<br><br>Defendants. | **CIVIL ACTION NO.**<br><br><br>**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Dr. Farooz Ahmad Rather ("Plaintiff" or "Dr. Rather"), through undersigned counsel, alleges as follows:

## I.  PRELIMINARY STATEMENT

1.    Plaintiff is an accomplished Indian writer with extensive international experience. Dr. Rather's work, including his original essays, short stories, and other writings have been featured in highly regarded literary journals and magazines, such as the *World Literature Today* and *The Common*, among others. *See generally,* Exh. 1 and 4.

2.    Further, Plaintiff's fiction novel, *The Night of Broken Glass*, has garnered international acclaim and recognition and has been lauded in *Wande Magazine*, *the Daily Sabah*, *Johannesburg Review of Books*, and *News 18*. His novel has also been used in a research seminar at the world-renowned Stockholm University in Sweden and was mentioned in *The Guardian* as one of the top five writings to explain the Kashmir conflict. *See generally*, Exh. 1 and 4.

3.    Dr. Rather has also received distinction for his extraordinary ability in literature and creative writing through the receipt of significant awards. For example, Dr. Rather was selected for the Sangam House Writing Residency - India's only funded residency for writers in all languages, *Kenyon Review's* prestigious Summer Residential Writers Workshop, he was the only finalist in the fiction category of the DISQUIET Literary Contest, which had nearly 1,200 entries, and was one of only three people shortlisted for the First Book Award for Fiction in the annual Tata Literature Live! Mumbai LitFest, among others. *See generally,* Exh. 1 and 4.

2

4.      As a result of his extraordinary literary contributions, Plaintiff has garnered international acclaim and attracted media attention worldwide, resulting in his work and achievements being featured in such major media as *The Guardian*, *The Chicago Review of Books*, *The Common*, and *Literary Hub* among others. *See generally,* Exh. 1 and 4.

5.      Dr. Rather's extraordinary talent and achievements led to his being sought out as a judge for the work of his peers, including as a literary critic and in editorial roles. He has been sought out to provide reviews of numerous books by renowned authors, such as Irish novelist and nonfiction writer Joseph O'Neill and Japanese writer Yoko Ogawa. His book reviews have been published in award-winning and acclaimed literary publications such as *The Common*, the *Michigan Quarterly Review*, and *The Kenyon Review*. He has also served as Interviews Editor for the *Southeast Review* and has served as a Voting Member for the National Book Critics Circle Award. *See* Exh. 1.

6.      This action is brought against the Defendants for declaratory judgment, injunctive relief, and review of an agency action under the Administrative Procedure Act ("APA") based on Defendants' unlawful, arbitrary, and *ultra vires* denial of Plaintiff's I-140 Petition for Alien Worker ("I-140 EB-1 petition"), which sought to classify him as "an alien with extraordinary ability" in the field of literature and creative writing. *See* Exh. 5.

## II.      STATEMENT OF FACTS

7.      Plaintiff filed his I-140 Immigrant Petition for an Alien Worker with USCIS seeking an immigrant visa under the employment-based first preference category ("EB-1A") of the Immigration and Nationality Act ("INA") on the basis of his extraordinary ability as a literature and creative writer. In order to demonstrate eligibility for the immigrant visa,

a petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, either through evidence of one-time achievement or by satisfying at least three of ten qualifying criteria outlined in 8 C.F.R. §204.5(h)(3).

8.      The submission of an I-140 Petition for Immigrant Worker under the EB-1 classification, pursuant to INA §203(b)(i)(A), provides for the immigration of aliens with extraordinary ability in the sciences, arts, education, business, or athletics. As an alien of extraordinary ability in the arts, Dr. Rather may self-petition, pursuant to 8 CFR §204.5(h).

9.      Plaintiff-petitioner filed his I-140 EB-1 petition with Defendant USCIS' Texas Service Center in August 2022. *See generally,* Exh. 2. At the time of filing, Plaintiff requested Premium Processing Service and submitted Form I-907 with the required $2,500 filing fee. *Ibid.* Plaintiff's I-140 Premium Processing petition was received by the Texas Service Center ("TSC") on August 10, 2022, and issued a receipt number [Receipt #SRC2228650547]. *Ibid.*

10.      Plaintiff submitted more than 700 pages of documentary evidence establishing his eligibility for the employment-based first preference category ("EB-1A"), including the following:

   a.   Evidence of published material about Dr. Rather and his work in professional publications and major media around the world, including *The Guardian*, *The Adroit Journal*, and *The Spectrum*, *The Columbia Journalism Review* amongst others.

   b.   Evidence that Dr. Rather's original works have been displayed in exhibitions or showcases around the world having been featured in multiple literary

journals and magazines, including *World Literature Today*, *The Adroit Journal*, and *The Common* amongst others.

c.   Evidence that Dr. Rather has received lesser nationally or internationally recognized prizes or awards for excellence in the field of literature, including being selected to the Hazel Dick Leonard Faculty Fellowship program, the Sangam House Writing Residency, *Kenyon Review's* Summer Residential Workshops for Fiction, the only finalist in the Fiction genre of the DISQUIET International Literary Contest, and being shortlisted for the First Book Award for Fiction in the Tata Literature Live! The Mumbai LitFest.

d.   Evidence that Dr. Rather was asked to judge the work of peers in his field by serving as a literary critic and in editorial roles. Plaintiff provided book reviews for renowned authors such as Joseph O'Neill, Yoko Ogawa, Amir Ahmadi Arian, Mahir Guven, and Tanguy Viel amongst others. Plaintiff's reviews were published in award-winning and acclaimed literary journals and magazines such as *The Common*, *Ploughshares*, *Michigan Quarterly Review*, *Kenyon Review*, *The Millions*, and *Southeast Review*.

e.   Evidence that Dr. Rather has made original contributions of major significance to the field of literature and creative writing as demonstrated by his publication of original essays, short stories, and other writings in highly regarded journals and magazines, his numerous distinctions, awards, and recognition in his field, the widespread commentary his work has garnered and publications which have covered his work, his serving as a literary critic and editor, and the objective testimony of experts in the field.

f.  Evidence that Dr. Rather has authored scholarly articles, essays, and short stories in literary journals and magazines of distinguished reputation and international circulation in his field, including *World Literature Today*, *Carve Magazine*, *The Adroit Journal*, *The Common*, *Scroll.in*, and *Himal Southasian*.

g.  Evidence in the form of expert opinions from authorities in Plaintiff's field, including:

1.  Brian Norman, Dean of the Gwen Ifill College of Media, Arts, and Humanities at Simmons University.

2.  Robert Olen Butler, Department of English Krafft Distinguished Professor at Florida State University and Pulitzer Prize Laureate.

3.  Sheldon George, Professor and Department Chair of English at Simmons University.

4.  Corrinne Clegg Hales, Professor Emeritus, Department of English, California State University, Fresno, and Contributing Editor for *the Normal School*.

5.  Skip Horack, Associate Professor of Creative Writing, English Department, Florida State University.

6.  Dorothy Chan, Assistant Professor of English, University of Wisconsin-Eau Claire and Co-Founder of Honey Literary Inc.

11.   In response to the above submission, Defendant USCIS issued a Request for Evidence ("RFE") on August 18, 2022. *See* Exh. 3.

12.     Defendant USCIS asserted in its Request for Evidence that Plaintiff failed to satisfy four of the six "qualifying criteria" for eligibility under 8 C.F.R. §204.5(h)(3) that he had presented in his initial petition: (1) Evidence of published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought; (2) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field; (3) Evidence that Dr. Rather has received lesser nationally or internationally recognized prizes or awards for excellence in the field; and, (4) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases. USCIS found that Plaintiff met the plain language of two of the submitted criteria: (1) Evidence of the beneficiary's authorship of scholarly articles in the field, in professional or major trade publications or other media; and, (2) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought. *Ibid.*

13.     The generic nature of the Request for Evidence issued by Defendant USCIS makes it clear that a serious analysis of the evidence and Plaintiff's eligibility was never conducted as the notice repeatedly requested documentary evidence of Plaintiff that had already been included in his initial submission to USCIS.  *See* Exh. 3. Indeed, in much of the RFE, Defendant USCIS and the Texas Service Center failed to specifically reference any of the relevant and probative evidence submitted by Plaintiff when determining that he did not meet the regulatory criteria. *Ibid.* Instead, the RFE speaks in generalities of Plaintiff's failure to provide evidence to satisfy the standards set forth in the regulations, citing no statutory or legal authority in support of its positions. *Ibid.*

14.    For instance, Defendant USCIS states in the RFE, "there is no evidence in the record that Plaintiff received the nationally or internationally recognized prizes or awards which are given for excellence." *See* Exh. 3, p. 4. This statement goes directly in the face of ample documentary evidence provided demonstrating Plaintiff's receipt of multiple notable writing residencies and fellowships, which Defendant USCIS conveniently ignores in it RFE. Within literature and creative writing, fellowships and residencies are often frequently considered "awards" which are designed to recognize and amplify the outstanding voices in the field. However, Defendant USCIS chose not to engage with or even address this line of reasoning, opting instead to simply parrot the plain language of the criterion, completely ignoring Plaintiff's argument and relevant evidence submitted in support of his claim and failing to conduct a serious, in-depth analysis of said evidence.

15.    Another example of Defendant USCIS' arbitrary and capricious dismissal of Plaintiff's relevant evidence came in their analysis of the criterion related to published material about the alien in professional or major trade publications or other major media. The Director writes in the RFE regarding Plaintiff's submitted articles speaking to his work and accomplishments, "Most of them are regional and local publications except few major publications which are not focused on the beneficiary or about the beneficiary." *See* Exh. 3, p. 5.  This feeble analysis by the Director dismisses all of Plaintiff's submitted evidence in one sweeping gesture with no reference to the specific and substantial evidence provided in the record. Notably, Plaintiff submitted ten articles from ten separate major media publications speaking to his extraordinary talent and success as a writer; however, Defendant USCIS failed to specifically name even one of these articles or publications in their RFE,

preferring instead to simply disqualify the published material in its entirety using murky generalizations.

16.     Further, the RFE continues, "…In addition, most of them are interview articles/transcripts. The evidence does not establish that these articles are published about you (not focused about you)." *See* Exh. 3, p. 5.  This paradoxical statement calls into question the efficacy of the Director in evaluating Plaintiff's eligibility for the instant benefit, whereby USCIS, in acknowledging that most of Plaintiff's submitted articles are interviews with Plaintiff, alleges that the interviews themselves are somehow not sufficiently related to Plaintiff or his work. Aside from its illogical contradictions, this statement creates its own arbitrary evidentiary burden for Plaintiff not based in the law. This new requirement set by the Director runs contradictory to the agency's own position on the matter. A simple search of USCIS' online repository reveals a number of non-precedential AAO decisions which specifically speak to the submission of interviews under the instant criterion. *See In Re: 6511837* (AAO 2020); *In Re: 6245728* (AAO 2020); *In Re: 12685089* (AAO 2021); *In Re: 8638300* (AAO 2020); and *In Re: 8641102* (AAO 2020). These decisions collectively discuss radio, television, and print interviews, reiterating in each the need to "*submit transcripts* to establish published material about [Petitioner] relating to [Petitioner's] work" and comply with the regulatory requirements related to translations and the relevant publication information in order to satisfy the criterion. *See In Re: 6245728* (AAO 2020) and *In Re: 8641102* (AAO 2020). The contrarian position taken by the agency regarding the substantial documentary evidence demonstrating Petitioner's having been interviewed, featured, and cited by multiple major publications and media outlets under this criterion demonstrates an

unwillingness on behalf of the Director to grant Petitioner an immigration benefit for which he is clearly statutorily eligible.

17.      Yet again, Defendant USCIS failed to properly engage with the evidence in the record in evaluating Plaintiff's eligibility under the criterion relating to his original artistic contributions of major significance in the field. Specifically, the RFE notes that "[t]here is no evidence that the beneficiary made original contributions of major significance in the field," *See* Exh. 3, p. 6. This standalone statement does not cite any of Petitioner's evidence nor address any purported deficiency in the provided documentation, a list comprised of "the copies of testimonials from Dr. Norman, Ms./Mr. Butler, Dr. George, Dr. Horack and Dr. Chan; [and] details of the beneficiary's contributions…the beneficiary's publications, the beneficiary's Ph.D. diploma, the beneficiary's Master's diploma, the beneficiary's C.V., [and] the details of beneficiary's employment." *Ibid.* While the RFE provides no meaningful examination of this proffered evidence, Defendant USCIS nonetheless asserts that Plaintiff's documentation was lacking as it did not contain "details of citation of the beneficiary's articles by other researchers like the beneficiary's citation history from Google, publisher history, publication statistics and publisher rankings." *Ibid.* Not only is this request related to citation history wholly incompatible with Plaintiff's field of endeavor as a literature and creative writer, but it demonstrates Defendant USCIS' flagrant disregard and negligence for the evidence so carefully presented to them as well as for their very own standards.

18.      Furthermore, a similarly cursory analysis of the provided testimonial letters was offered by the Director which asserts that "[t]he submitted letters discussed the beneficiary's contributions in the field. Though these statements are encouraging, they are not sufficient to establish that the beneficiary made contributions of major significance in his

field" before noting that such "[l]etters, though not without weight, cannot form the cornerstone of a successful extraordinary ability claim." *Ibid.* It is important to once again note that the RFE offers no concrete commentary on the proffered evidence, instead speaking in generalizations of the overall deficiencies of the numerous letters provided by such experts as a Pulitzer Prize winning laureate, distinguished professors, and a contributing editor of a prestigious literary magazine. Moreover, it should be noted that the submitted letters do not lack specificity, detail, or credibility, nor are they lacking in corroborative evidence. *Matter of Y-B-*, 21 I&N Dec. at 1136. Specifically, <u>objective evidence</u> of Petitioner's original contributions was submitted in the initial I-140 petition in the form of the Petitioner's many articles published in scholarly publications, his receipt of notable fellowships and awards, his original books, numerous critical reviews of his work, and the use and influence of his work in academic settings. As such, contrary to what the Director determined in the RFE, the submitted expert testimonials do not form the "cornerstone" of Petitioner's extraordinary ability claim. *Ibid.* Rather, extensive documentary evidence was submitted corroborating the experts' statements regarding the Plaintiff's original contributions of major significance. Once again however, this evidence was summarily dismissed without any incisive analysis or comment by Defendant USCIS.

19.     Lastly, in its RFE, the Defendant USCIS contends that the evidence does not demonstrate the display of Plaintiff's work in the field at artistic exhibitions or showcases, stating, "[i]n support of this criterion, you stated that the beneficiary's original works have been displayed in multiple literary journals and magazines. To this effect, you referred to the beneficiary's published material/books. However, there is no evidence that the beneficiary's work has been displayed at artistic exhibitions or showcases." *See* Exh. 3, p. 7.  It should be

noted that 8 CFR 204.5 (h)(3)(vii) requires that a Petitioner's work be displayed at an exhibition, defined as a "public showing." The statute does not require that Petitioner's work be exclusively a work of art, but only that the "public showing" be "artistic"—meaning "of, relating to, or characteristic of art or artists." Further, despite the Director's statutory interpretation, USCIS has a longstanding tradition in asserting that artistic exhibitions or showcases are not limited to presentations of the visual arts, where tangible pieces of art were on display. The Administrative Appeals Office has defined "Artistic Exhibitions" broadly. For example, see *Matter of A-H-A-,* ID# 409898 (AAO July 28, 2017) (Voice Acting Instructor); *Matter of C-J-R-.* ID# 669542 (AAO Dec. 19. 2017) (Video producer and director); *Matter of D-H-B-,* ID# 391239 (AAO June 12, 2017) (Comedian); *Matter of K-L-, * ID# 405119 (AAO July 12, 20 17) (Dancer); *Matter of J-L-K-,* ID# 457574 (AAO July 26, 2017) (Actor and Acting Coach performing in TV programs); *In Re: 9732760* (AAO Aug. 10, 2020) (Musician and Music Producer). Petitioner's public showing of his deep, professional knowledge concerning the arts and culture, thus qualifies unmistakably as "artistic." Therefore, Plaintiff's presentation and discussion of his published works at various conferences and forums undoubtedly qualifies within the statutory meaning of the criterion. *See generally* Exh. 1.

20.     In response to the RFE, Plaintiff submitted a comprehensive evidentiary packet of nearly 200 pages addressing the areas of insufficiency outlined by Defendant USCIS, which was received by the Texas Service Center on December 19th, 2022. *See generally* Exh. 4. Plaintiff's response to the RFE discusses in detail the shortcomings in the agency's analysis of the evidence for each of the eligibility criteria presented in addition to supplemental evidence. *Ibid.*

21.     The Texas Service Center denied Plaintiff's EB-1A I-140 petition on December 29, 2022. *See* Exh. 5. In the denial, Defendant USCIS determined that Plaintiff had established the three qualifying criteria necessary to establish eligibility for the EB-1A visa: (1) Evidence of the beneficiary's authorship of scholarly articles in the field, in professional or major trade publications or other media; (2) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought; and, (3) Evidence of published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. However, the Director concluded that Plaintiff did not meet the final merits determination to reach the level of one of the small percentage who has risen to the top of his field of endeavor. *See generally* Ex. 5.

22.     In analyzing the evidence submitted in support of each of the three remaining categories, as well as in support of the final merits determination that Plaintiff is one of the small percentage who has risen to the top of his field, Defendant USCIS blatantly ignores statutory criteria and legal precedent.  In fact, the Texas Service Center repeatedly disregards the overwhelming majority of Plaintiff's supporting evidence, including their own past legal conclusions, and instead fixates on irrelevant details of the petition which it used to form the basis of the denial.

23.     For example, Defendant USCIS in its I-140 denial states in part the following related to the criterion regarding documentation of Plaintiff's receipt of lesser nationally or internationally recognized prizes or awards for excellence:

> The evidence in the record did not establish that the aforementioned awards were given for excellence and also, the evidence in the record did not establish that these prizes or

awards are nationally or internationally recognized in the field. It has to be noted that an award limited to persons from a single institution may have little national significance, even if the institution itself is nationally recognized. It is emphasized that the awards or prizes awarded to the beneficiary while he was a student are designed for students and early career professionals which "inherently exclude established professionals who have already achieved excellence in the field." The fact that the competition draws from a national pool of student competitors is not sufficient to establish that it is a nationally recognized prize for excellence. Here, the Petitioner did not demonstrate the national or international significance of the award in the field, but focused on the purpose and background of the competition. Exh. 5, p. 4.

In making this assertion, Defendant USCIS once again makes no mention of Plaintiff's reasoning included in the RFE response, that within the field of literature and creative writing, fellowships and residencies are frequently considered awards which recognize the outstanding voices in their field. Plaintiff's response further listed a number of reputable organizations which have created fellowship programs to recognize and amplify writers in their work, such as the National Endowment for the Arts, the Mellon Foundation, the Royal Society of Literature, and the National Endowment for the Humanities, among others. *See generally* Exh. 4. Plaintiff also noted that these prestigious fellowship programs are often featured under the "awards" section of the organization's websites. *Ibid.* Defendant USCIS fails to meaningfully address this line of reasoning, offering no specific analysis of Plaintiff's individual awards or the supporting evidence contained therein. *Ibid.* Rather, Defendant USCIS once again summarily rejects Plaintiff's evidence with broad generalizations. Notably, the Texas Service Center writers in its denial that, "[i]t has to be noted that an award limited to persons from a single institution may have little national significance, even if the institution itself is nationally recognized," a startling claim backed by no legal precedent or statutory distinction. *See* Exh 5, p. 4.

24.     Further, for the criterion regarding evidence of the display of the beneficiary's work in the field at artistic exhibitions and showcases, Defendant USCIS offers no in-depth analysis whatsoever in their denial. *See* Exh. 5, p. 6.

25.      In fact, the entirety of the Director's analysis of Plaintiff's evidence for this criterion can be found in the following perfunctory statement: "In support of this criterion, the petitioner stated that the beneficiary's original works have been displayed in multiple literary journals and magazines. To this effect, the petitioner referred to the beneficiary's published material/books. However, there is no evidence in the record that the beneficiary's work has been displayed at artistic exhibitions or showcases. Hence there is no evidence in the record to establish the requirements for this criterion." *Ibid.* This is a wholly unacceptable standard of review by Defendant USCIS. Here, the Director has once again failed to even address Plaintiff's arguments or specific evidence, including the cited case law from the Administrative Appeals Office regarding the historically broad definition of "artistic exhibition" which was submitted as part of Plaintiff's RFE response. It is clear from this evaluation that the Director never gave Plaintiff's evidence its due consideration and calls into question whether a serious in-depth analysis of Plaintiff's case was ever truly conducted.

26.     Further, Defendant USCIS in its denial makes the same haphazard and wanting analysis of Plaintiff's eligibility regarding the criterion related to original artistic contributions of major significance in the field. Pursuant to *Chursov v Miller*, rather than assess each piece of evidence individually, the Director should consider the totality of the submission in order to properly evaluate the originality and significance of Plaintiff's contribution to his field. However, the Director instead insisted upon dismissing Plaintiff's voluminous evidentiary totaling nearly 1,000 pages with little comment or analysis. The

Director states in the denial, repeating the language of the RFE nearly word for word with no additional analysis:

> In order to satisfy this criterion, petitioners must establish that not only have they made original contributions, but also that those contributions have been of major significance in the field. For example, a petitioner may show that the contributions have been widely implemented throughout the field, have remarkably impacted or influenced the field, or have otherwise risen to a level of major significance. The support letters describe the beneficiary's contributions, activities, and abilities in the field. In addition, they discussed the importance and contribution of his service to the field. Though the statements from the support letters are encouraging, they are not completely sufficient to establish that the beneficiary made contributions of major significance in the field…Letters, though not without weight, cannot form the cornerstone of a successful extraordinary ability claim. Exh. 5, p. 5.

Again, it should be noted that Plaintiff's submitted expert testimonials do not form the "cornerstone" of his extraordinary ability claim, though this appears to be the sole focus of the Director's analysis of Plaintiff's eligibility under this criterion. Contrary to this statement, extensive documentary evidence was submitted corroborating the experts' statements regarding Plaintiff's original contributions of major significance, including Plaintiff's many articles published in scholarly publications, his receipt of notable fellowships and awards, his original books, numerous critical reviews of his work, and the use and the influence of his work in academic settings. *Ibid.* However, it is clear that this evidence was not duly considered by Defendant USCIS as the Director concentrates his attention exclusively on Plaintiff's expert testimonial letters, whilst somehow managing to avoid engaging in any meaningful analysis of these documents as well.

27.     In its denial of Plaintiff's I-140 Petition, Defendant USCIS continuously contorts its argument simply to deny that Dr. Rather's work rises to the standard set by the statute. Regarding this same criterion, the Director writes the following regarding "major significance:" "Regardless of the field, the phrase 'contributions of major significance in the

field' requires substantial influence beyond one's employer, clients, or customers." *See* Exh. 5, p. 5. Plaintiff having been found to satisfy the criterion regarding published material in professional or major trade publications or other major media clearly demonstrates his substantial influence beyond his employer, client, and customers, as he has been interviewed and featured in such prestigious publications as *The Indian Express, The Chicago Review of Books,* and *The Guardian*, among others, with a massive readership demonstrative of the reach of Plaintiff's work. When viewed in conjunction with the multitude of testimonial letters submitted by experts in Plaintiff's field, which speak at length to Plaintiff's original contributions and their major significance in the field, it is clear that Plaintiff satisfies this criterion. That Defendant USCIS refused to consider any of the above evidence in their evaluation speaks to the superficial nature of their analysis and their inconsistent application of the law.

28.     It seems that the only piece of evidence the Director chose to address under the instant criterion is that of Plaintiff's citation history, which it used to support its assertion that "the beneficiary's record of publications does not indicate that the beneficiary made original artistic/scientific contributions of major significance in his field." *See* Exh. 5, p. 6.  First, citation history is not related to Plaintiff's standing in the field, as he applied for the EB-1 as writer not a literary scholar or academic.  While the citations are demonstrative or Plaintiff literary knowledge, they are not per se indications of his success.  Second, Plaintiff addressed this misplaced logic in his RFE response, citing *Matter of F-E-*, ID# 46885 (AAO Mar. 20, 2017), whereby the USCIS' Administrative Appeals Office has acknowledged that publications and citation history are not reflective of one's ability in certain fields. *See* Exh. 4, p. 16.  Even further, Plaintiff also included a recent study ranking the scientific fields by

their rates of publication and citation, which ranked Plaintiff's field of Literature as 162nd out of 236 fields. *Ibid.* In making this contention, Defendant USCIS conveniently chose to ignore Plaintiff's assertions and objective supporting evidence related to the inapplicability of citation history within his specific field, in addition to the myriad of other evidence in support of Plaintiff's original contribution of major significance to his field, including a *The Guardian* article highlight Plaintiff's literary work as one of "the best books to help understand" the ongoing conflict in Kashmir. *See generally* Exh. 1 and 4.

29.    Defendant USCIS concluded that Plaintiff met at least three of the ten criteria under 8 C.F.R. Section 204.5(h)(3) in their Part One Analysis of Criteria; however, in its Denial, the Director determined that, based on the totality of Plaintiff's evidence, he failed to satisfy the Final Merits Determination in accordance with *Kazarian*. *See generally* Exh. 5. According to the Director's determination, Plaintiff has not reached a level of expertise indicating that he is one of that small percentage who has risen to the top of his field of endeavor, and the evidence does not show his achievements are significantly above almost all others in his field at a national or international level and does not establish sustained acclaim. *See* Exh. 5, p. 8. In this analysis, Defendant USCIS reiterates its previous circular logic and broad dismissal of Plaintiff's relevant evidence to reach their preformed conclusion, once again failing to include any legal standards or relevant case law to support their position.

30.    For example, regarding Plaintiff's evidence of authorship of scholarly articles in the field, Defendant USCIS first acknowledges that Plaintiff met this criterion in part one of their analysis. However, the Director states that, "The number of publications and citations does not reflect that the beneficiary belongs to the very top of the field of endeavor...Without the high citation history or thorough evidence of usage of beneficiary's publications, it is

difficult to judge the quality of beneficiary's publications particularly under extraordinary ability." *See* Exh 5, p. 7. Here again, Defendant USCIS reduces hundreds of pages of Plaintiff's relevant evidence - including numerous testimonials from distinguished experts in the field exhorting Plaintiff's national and international acclaim - to merely a recitation of Plaintiff's lack of citation history, again with no legal precedent or statutory guidelines included in support of their conclusion. *Ibid.* Again, the Director refuses to consider or even address Plaintiff's arguments regarding citation history as an inapplicable litmus test to evaluate sustained national or international acclaim in the field of literature and creative writing. Even worse, Defendant USCIS clearly utilizes this flawed logic as the primary rationale for denying Plaintiff's petition.

31.     Finally, Defendant USCIS offers no substantial analysis whatsoever in their Final Merits Determination that Plaintiff is not one of a small percentage who has risen to the top of his field of endeavor. Aside from the Director's claim regarding Plaintiff's lack of citation history, the Director simply rephrases the language of several categories for the EB-1 classification, asserts these categories haven't been met, and states that they are contributing factors in Defendant USCIS' final merits determination. *See* Exh 5, p. 7. The Director repeatedly references considering the totality of the record, but it is clear from the record that an in-depth analysis of Plaintiff's eligibility was never seriously conducted. It makes one question the serious consideration with which Defendant USCIS is evaluating its' EB-1 petitions.

32.     Here, Defendant USCIS and the Texas Service Center failed to appropriately adjudicate Plaintiff's petition for an EB-1 visa of extraordinary ability as a literary and

creative writer, as demonstrated by their egregious misapplication of the law and dismissal of probative evidence.

### III.        JURISDICTION

33.        This Honorable Court has subject matter jurisdiction over the claims alleged in this action under (1) 28 U.S.C. § 1331 (federal question jurisdiction), because Plaintiff's claims arise under the laws of the United States, including 5 U.S.C. §§ 555 and 701, *et seq.* ("APA"), 8 U.S.C. § 1101, *et seq.* ("INA") (including 8 U.S.C. § 1182). This court may grant relief in this action under 5 U.S.C. §§ 553, *et seq.*, and §§ 701, *et seq.*; and 28 U.S.C. §§ 2201, *et seq.* (Declaratory Judgment Act).

34.        This Honorable Court is not deprived of jurisdiction by 8 U.S.C. § 1252, INA § 242. *See, e.g., Zadvydas v. Davis,* 533 U.S. 678, 688 (2001) (finding that INA § 242 does  not bar a claim challenging agency authority that does not implicate discretion). Generally, a narrower construction of the jurisdiction-stripping provision is favored over the broader one, as reflected by the "familiar principle of statutory construction: the presumption favoring judicial review of administrative action."  *Kucana v. Holder,* 130 U.S. 827, 839 (2010).  Absent "clear and convincing evidence" of congressional intent specifically to eliminate review of certain administrative actions, the above-cited principles of statutory construction  support a narrow reading of the jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(B)(ii). *Id.,* at 839. *See also, Geneme v. Holder,* 935 F.Supp.2d 184, 192 (D.D.C. 2013) (discussing *Kucana's* citation to a presumption favoring judicial review of administrative action when a statute does not specify discretion.)

35.     8 U.S.C. § 1252(a)(5), INA § 242(a)(5), provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As this is not an action to review a removal order but an action challenging decisions by Defendants to deny Plaintiff's EB-1A I-140 petition, which decision was arbitrary, capricious, and contrary to law and settled agency practice, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201.

## IV.          VENUE

36.   Venue is properly with this Court, pursuant to 28 U.S.C. § 1391(b)(1)(2) as this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## V.          PARTIES

37.     Plaintiff is a Literature and Creative Writer of extraordinary ability. Based on his accomplishments, fully outlined in his I-140 petition, Plaintiff filed his I-140 EB-1A petition on August 10, 2022 with the Texas Service Center of USCIS seeking an immigrant visa with which to enter the United States and work in his field of extraordinary ability. *See* Exh. 2.

38.     John Allen is the Director of the Texas Service Center of the USCIS, who is named herein only is his official capacity, as well as his successors and assigns. He is charged with overseeing the operations of the TSC, which includes adjudication of I-140 EB-1A

petitions processed there. He is further authorized to delegate certain powers and authority to subordinate employees of the USCIS.  Defendant Allen works at the TSC, in Irving, Texas.

39.     Alejandro Mayorkas is the Secretary of the DHS and this action is brought against him in his official capacity only, as well as his successors and assigns. He is charged with overseeing the DHS, which includes sub-agency USCIS, and with implementing the INA. He is further authorized to delegate certain powers and authority to subordinate employees of the USCIS.  DHS is headquartered at 245 Murray Lane, S.W., Washington, DC 20598.

40.     Merrick Garland is the Attorney General of the United States and this action is brought against him in his official capacity only, as well as his successors and assigns. He is charged with certain functions involved in the implementation of the INA and is further authorized to delegate such powers and authority to subordinate employees of  the  Federal Bureau of Investigation ("FBI"), which is an agency within the U.S. Department of Justice ("DOJ"). The DOJ is headquartered at 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

41.     Ur M. Jaddou is the Director of USCIS, who is named herein only in her official capacity, as well as her successors and assigns. She is generally charged with the implementation of the INA and is further authorized to delegate certain powers and authority to subordinate employees of USCIS. USCIS is specifically assigned the adjudication of I-140 EB-1 petitions.  USCIS is headquartered at 20 Massachusetts Avenue, N.W., Washington, DC 20529.


## VI.     EXHAUSTION OF REMEDIES NOT REQUIRED

42.     Plaintiff is not required to exhaust any administrative remedies before bringing this complaint. The denial of the I-140 EB-1A petition by Defendant USCIS is a final agency action. There is no statutory or regulatory requirement to appeal to the agency in question. *See, Darby v. Cisneros,* 509 U.S. 137, 146-47, 153 (1993); *RCM Technologies, Inc. v. DHS,* 614 F.Supp.2d 39, 45 (D.D.C. 2009).

## VII.  CLAIMS FOR RELIEF

### Count I

### (APA Violation by DHS/USCIS of 5 U.S.C. § 701, *et seq.*)

43.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44.     Pursuant to the APA, a person adversely affected by agency action in entitled to judicial review.  *See* 5 U.S.C. §702.

45.     The APA requires this Court to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See,* 5 U.S.C. § 706(2)(A).

46.     Defendant USCIS's decision to deny Plaintiff's EB-1 I-140 petition was illegal, improper, and is reviewable under 5 U.S.C. § 702.

47.     As a result of defendant USCIS's illegal conduct, Plaintiff is "suffering [a] legal wrong because of agency action" and are "adversely affected or aggrieved by [the] agency action," and therefore are entitled to judicial review of the revocation under 5 U.S.C. § 702.

48.    Defendants' decision to deny Plaintiff's I-140 petition despite the evidence in the record demonstrating that he met at least 3 of the 10 specified criteria, *supra*, is "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law" and should be "held unlawful and set aside" under 5 U.S.C. § 706(2)(A) and (D).

## Count II

### (Injunctive Relief for Violation of the Administrative Procedure Act 5 U.S.C. § 705)

49.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50.    Pursuant to 5 U.S.C. § 705, this Court may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve the status or rights of a plaintiff or plaintiffs pending the conclusion of review proceedings.

## VIII.    INJURIES TO PLAINTIFF

51.    Defendants' wrongful denial of Plaintiff's EB-1A I-140 petition interferes with his ability to dedicate himself to his craft and to engage with the creative writing and literary industry in the United States, thereby causing him substantial professional, personal, and financial harm.

52.    As a result of Defendants' arbitrary, capricious, *ultra vires*, and otherwise unlawful decision to deny his EB-1A I-140 petition, Plaintiff is unable to obtain an immigrant visa and enter the United States as a lawful permanent resident. Plaintiff is unable to plan for his future, including future publications, contracts, and professional commitments.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Honorable Court:

(1)     Declare that the denial of Plaintiff's EB-1A  I-140 is *ultra vires*, erroneous as a matter of law, arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law, and violates due process;

(2)     Issue an order directing Defendants to reopen and approve Plaintiff's EB-1A I-140 petition;

(3)     Issue an order directing Defendants to complete processing of Plaintiff's EB-1A I-140 petition within a reasonable time set by this Court;

(4)     Grant such other relief as this Court deems proper under the circumstances; and

(5)     Grant attorney's fees, expenses and costs of court to Plaintiff, pursuant to the EAJA.


Respectfully submitted on this 17th day of March 2023.

**/S/ SANJAY SETHI**

By:     Sanjay Sethi, Esq.
        Sethi and Mazaheri, LLC
        344 Grove Street, #111
        Jersey City, NJ 07302
        Tel: (646) 405-9846
        Fax: (201) 595-0957
        Email: sethi@sethimaz.com

        *Attorney for Plaintiff*

25